David C. Dalthorp
JACKSON, MURDO & GRANT, P.C.

James Kaste, WSB No. 6-3244
Erik E. Petersen, WSB No. 7-5608
Wyoming Attorney General's Office

*Attorneys for Defendant-Intervenor
State of Wyoming*

William W. Mercer
Andrew C. Emrich (*Pro Hac Vice*)
HOLLAND & HART LLP

*Attorneys for Defendant-Intervenor
Cloud Peak Energy Inc.*

W. Anderson Forsythe
Brandon J.T. Hoskins
MOULTON BELLINGHAM PC

Kirsten L. Nathanson (*Pro Hac Vice*)
Elizabeth B. Dawson
CROWELL & MORING LLP

*Attorneys for Defendant-Intervenors
Peabody Caballo Mining, LLC and
BTU Western Resources, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | | |
|---|---|---|
| WESTERN ORGANIZATION OF RESOURCE COUNCILS, *et al.*, Plaintiffs, | ) ) ) ) | |
| v. | ) ) | Case No. CV 16-21-GF-BMM |
| U.S. BUREAU OF LAND MANAGEMENT, *et al.*, Defendants, | ) ) ) ) ) | **DEFENDANT-INTERVENORS' JOINT REMEDY BRIEF** |
| and | ) ) | |
| STATE OF WYOMING, CLOUD PEAK ENERGY INC., PEABODY CABALLO MINING, LLC, and BTU WESTERN RESOURCES, INC., Defendant-Intervenors. | ) ) ) ) ) ) | |

Defendant-Intervenors respectfully submit this joint brief on the issue of remedy, in accordance with the Court's Order dated March 26, 2018 ("Order") (ECF 111).

## ARGUMENT

Given the simultaneous nature of the briefing pursuant to this Court's Order, we are unable to ascertain exactly what Plaintiffs seek as a remedy in this case. During the meet and confer process, Plaintiffs would not specify the scope of their remedy request.  We understand that Plaintiffs may seek partial or full vacatur of the 2015 RMPs, and may seek to enjoin BLM from taking any actions in the future related to some or all coal and oil and gas leasing and development within the challenged RMP planning areas.

As a threshold matter, Plaintiffs may not lawfully seek any relief related to BLM actions that took place before the 2015 approval of the Miles City and Buffalo RMPs at issue in this case. Any such relief would exceed this Court's jurisdiction because it involves agency actions linked to, or based upon, different RMPs not challenged here.

For pending or future leasing or development actions that BLM takes *pursuant to the RMPs at issue in this case*,[1] injunctive relief is not warranted as explained below.  Neither is vacatur (in whole or part) of the 2015 RMPs warranted.  We reserve the right to request additional briefing on remedy depending upon the nature of and support provided for Plaintiffs' request.

I.    **Plaintiffs Have Not Demonstrated That Any Additional Relief is Warranted.**

In remanding the RMPs to BLM, the Court has already given Plaintiffs what they sought in this litigation: an order directing BLM to conduct additional environmental analysis of certain aspects of the RMPs.  The Court has issued an order directing BLM to: (1) "conduct coal screening and consider climate change impacts to make a reasoned decision on the amount of recoverable coal made

---

[1] The Court, in its explanation of the injunctive relief it was awarding, limited its scope to "pending or future" actions. Order at 50-51.  Consistent with the Court's order and governing case law, the only injunctive relief Plaintiffs may even *request* is relief reaching pending or future agency action undertaken pursuant to the RMPs at issue here, not other final agency actions that pre-date the 2015 RMPs and are not challenged in this litigation.  *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 159-64 (2010) (overturning lower court injunction that enjoined agency action beyond the scope of the "particular agency order" challenged); *Los Angeles Haven Hospice, Inc. v. Sibelius*, 638 F.3d 644, 664 (9th Cir. 2011) ("'[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the *plaintiffs' before the court*" (emphasis added) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)); *see also infra* at 6-7 (explaining requirement to demonstrate standing, including injury, causation, and redressability, for particular relief sought).

available in the RMPs,"[2] (2) evaluate the "environmental consequences of downstream combustion of coal, oil, and gas open to development under each RMP," and (3) reconsider its application of global-warming-potential in its analysis.  Order at 46-48.

Further, the Court has imposed a mandatory injunction that in the period between the Order and completion of the supplemental analysis, "BLM will comply with the rulings in this Order at the lease-level and permit-level for any pending or future coal, oil, or gas developments."  *Id.* at 50-51.  Any further remedy is unnecessary and unsupportable under prevailing case law and the facts of this case.

## II.   Plaintiffs Cannot Overcome the High Burden to Justify Injunctive Relief.

Injunctive relief does not automatically follow after a NEPA violation. *Monsanto Co.*, 561 U.S. at 157 (rejecting presumption that an injunction should issue in response to a procedural NEPA violation). Rather, to be awarded any injunctive relief, Plaintiffs must establish all of the following: (1) irreparable harm,

---

[2] The aspect of the Court's order that requires BLM to undertake a new coal screening analysis—a process separate from the NEPA review here—may be subject to a motion for reconsideration.  *See* ECF 112.  But the essence of the order is that BLM evaluate areas open for *future* leasing.

(2) inadequacy of remedies at law, *i.e.*, money damages, [3] (3) that the balance of the hardships tilts in Plaintiffs' favor, *and* (4) that injunctive relief would serve the public interest. *Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1088 (9th Cir. 2015). In its Order, the Court acknowledged Plaintiffs' request that the Court "enjoin the leasing or development of coal, oil, or gas resources in the planning areas" until NEPA compliance is complete. Order at 49. The Court also recognized the legal standard required to grant such relief. *Id.*

In addition to the demanding legal standard to obtain injunctive relief, Plaintiffs must have standing to request injunctive relief beyond the standing necessary to assert a NEPA violation, *see Oregon v. Legal Servs. Corp.*, 552 F.3d 965, 969 (9th Cir. 2009) (standing demonstration required for "each form of relief sought"), while satisfying increasingly stringent evidentiary standards as the litigation progresses, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Due to the lack of specificity in their allegations, Plaintiffs have not established standing to enjoin any BLM actions within the Miles City or Buffalo planning areas. Plaintiffs have therefore failed to meet their burden that *any* injunctive relief beyond what the Court ordered is warranted, much less constraints on pending or future leasing or development of resources in the planning areas.

---

[3] Money damages are unavailable to prevailing plaintiffs in Administrative Procedure Act litigation such as this. 5 U.S.C. § 702.

**A.      Plaintiffs Have Not Demonstrated That They Will Suffer Irreparable Harm in the Interim Period Between this Court's Decision on Remedy and BLM's Response on Remand.**

Nothing Plaintiffs provided in our short post-ruling discussions, or in Plaintiffs' merits briefing, came close to demonstrating irreparable harm to seek any form of injunctive relief that would prevent or limit the BLM from approving pending or future actions with respect to any of the active oil and gas or coal leases in the Buffalo and Miles City planning areas. Indeed, the generalized errors Plaintiffs identified in the RMPs have to do with speculative future BLM actions generally, and not any particular actions respecting a specific project. Plaintiffs' declarations by and large focus on potential future projects—which is fair, given the prospective nature of the RMPs. But because of the forward-looking nature of their complaints, Plaintiffs have not identified any potential BLM actions related to current resource development that would cause them injury:

- Mr. Sikorski identifies two areas open for development in the Miles City RMP, ECF 72-3 ¶¶ 6-7, but not any imminent on-the-ground action.

- Mr. Punt complains about "new leases for oil and gas drilling in our drainage" pursuant to the Miles City RMP, ECF  72-4 ¶ 4, but does not identify any particular agency action that would cause him any injury.

- Mr. Cushman expresses generalized concerns about impacts of development in the Miles City planning area, but does not identify any

specific area with extant or pending BLM actions of particular
significance, either. ECF 72-7 ¶¶ 5-10.

- Ms. Byron expresses general concern about development in the Miles
  City planning area, and averred that she could "see oil and gas operations
  from [her] bike" while passing through Treasure and Rosebud counties,
  but does not identify any particular potential agency action, and instead
  asserts that merely seeing development diminishes her "overall
  experience and enjoyment of the planning area." ECF 72-6 ¶¶ 5-8.

- Finally, Ms. Anderson complains of *speculated* development on new oil
  and gas leases that the BLM may issue subsequent to the Buffalo RMP.
  ECF 72-5 ¶ 7. She also mentions visiting unspecified coal mines in the
  Buffalo planning area and areas with oil and gas development, and
  alleges having been a witness to "degradation of the region's air quality,"
  but does not allege specific injury from any particular potential agency
  action. *Id.* ¶ 13. Again, her alleged concerns regarding potential future
  development, e.g., *id.* ¶ 13, will be addressed at the project-specific level,
  per this Court's order.

While these allegations may have satisfied the Court that Plaintiffs had
standing to challenge the procedural sufficiency of NEPA analyses covering two
entire planning areas, they do not establish irreparable harm flowing from any

particular potential agency action, and call into question Plaintiffs' standing to request any injunctive relief related to prospective agency actions respecting resource development. *Friends of the Earth v. Laidlaw Envt'l Servs. Inc.*, 528 U.S. 167, 185 (2000) (requiring party to demonstrate redressability separately for injunctive relief and civil penalties); *Lujan v. Defs. of Wildlife*, 504 U.S. at 561.[4]

Furthermore, in the event Plaintiffs submit additional declarations in support of their remedy brief that assert injury from global climate change or other downstream combustion impacts from future development authorizations under the RMPs, such allegations would still not support entry of an injunction.

Plaintiffs simply cannot attribute global climate change or downstream combustion impacts to any *particular* development operation authorized under the RMPs.  As a result, this Court cannot issue an injunction for any prospective agency actions respecting development operations in the planning areas.  And any attempt to impose a broad-sweeping injunction would violate Ninth Circuit precedent.  *See Park Village Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1160 (9th Cir. 2011) (to the extent injunctive relief is granted, it must also be "tailored to remedy the *specific harm alleged*" (emphasis in

---

[4] The duty to establish standing for injunctive relief is particularly fatal to any request to enjoin agency actions taken under a previous RMP; Plaintiffs have absolutely no argument that such actions are fairly traceable to the action challenged here, depriving the Court of jurisdiction over related relief.

original)); *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) (a district court abuses its discretion by issuing an "overbroad" injunction).

Similarly, Plaintiffs cannot show that they will suffer irreparable harm from global climate change or downstream combustion impacts in the one-year anticipated remand period if future development authorizations are not enjoined. During this time, any number of nation-wide and global human activities will contribute to global climate change. Enjoining future oil, gas, and coal leasing and development authorizations in the two planning areas will not remedy the specific harm alleged by Plaintiffs. However, this Court's Order, requiring BLM to comply with the Order "at the lease-level and permit-level for any pending or future coal, oil, or gas developments" (Order at 50-51), provides Plaintiffs with the procedural NEPA safeguards they sought and obtained through this lawsuit.

Moreover, Plaintiffs lack standing to seek injunctive relief based on alleged harms from global climate change and downstream combustion impact because they cannot show these harms are fairly traceable to BLM's narrow NEPA errors. *See Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139–43 (9th Cir. 2013). Indeed, the Ninth Circuit has found that environmental groups lack standing where they cannot trace the agency's alleged violation to their global climate change injuries: "While Plaintiffs need not connect each molecule to their injuries, simply saying that the Agencies have failed to curb emission of greenhouse gases, which

contribute (in some undefined way and to some undefined degree) to their injuries, relies on an attenuated chain of conjecture insufficient to support standing." *Id*. at 1142-43 (internal quotation and citation omitted); *Ctr. for Biological Diversity v. U.S. Dep't of Interior*, 563 F.3d 466, 478-79 (D.C. Cir. 2009) (denying claims of standing to challenge outer-continental shelf leasing program because of failure to establish personal injury from climate change or causation).

In contrast to Plaintiffs' failure to demonstrate irreparable harm, an injunction halting in their tracks any pending agency actions under the Miles City or Buffalo RMPs (which are already subject to this Court's Order requiring fuller analysis, Order at 46-48), would irrefutably cause harm to the businesses involved and to the local economies for which resource development is so critical.  That harm is irreparable for purposes of evaluating injunctive relief. *E.g.*, *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 256 (3d Cir. 2011) (explaining that in cases involving mineral rights, particularly oil and gas leases, "depriving [lessees] of the unique oil and gas extraction opportunities afforded them by their mineral rights" is irreparable harm). Plaintiffs' inability to carry their burden to demonstrate irreparable harm absent any injunctive relief is fatal to any such request.

## B.    The Balance of Hardships and Public Interest Weigh Decidedly Against Injunctive Relief.

The Court may end its analysis at irreparable harm, for Plaintiffs must satisfy *all* factors to earn injunctive relief; therefore, an inability to satisfy one requires denial of Plaintiffs' request. Regardless, Plaintiffs cannot demonstrate that the remaining factors applicable to this case augur in their favor, either. Where, as here, an injunction is sought against the government, the balance of the hardships and the public interest merge in assessing a request for injunctive relief. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). Courts are to "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 24 (2008) (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

Plaintiffs cannot show that the balance of hardships, intertwined with the public interest here, favors them. As discussed further *infra* at III.A., the issues the Court remanded to BLM are very small in the scheme of the overall RMPs. BLM is already bound to reconsider those issues, as well as to undertake fuller analyses of any activities authorized pursuant to the RMPs during the remand. Order at 46-48.  Therefore, any hardship Plaintiffs could assert with respect to pending or future agency actions regarding future development is already being addressed pursuant to the Court's Order.  And again, Plaintiffs have not identified any

10

hardship they would suffer specific to the interim period between the Court's Order and BLM's action on remand, much less irreparable harm, as discussed above.

By contrast, injunctive relief against pending or future agency actions regarding leasing or mineral development in the planning areas would, as discussed above, cause hardship to not only Intervenor-Defendants, but also to non-parties who rely on the economic benefits attendant to such development. In this way, the public interest would not be well-served by enjoining prospective mineral development pending BLM's reconsideration of the issues identified by the Court. The actual, tangible harm that would ripple through the planning areas and local communities in the wake of injunctive relief against mineral development far outweighs any subjective, ephemeral harm Plaintiffs could identify (but which they have not) with respect to any specific current or prospective development.

In the end, it is Plaintiffs' burden to show that the balance of hardships and public interest weigh in their favor; neither BLM nor Intervenor-Defendants have the burden to demonstrate that injunctive relief is *not* warranted because the balance of hardships and public interest favor them. Based on the information presented as of this filing, Plaintiffs have not carried their burden.

11

## III.   Vacatur is Unsupportable and Would Not Achieve Plaintiffs' Goals.

Plaintiffs' amended complaint requests that the Court "[v]acate and set aside Federal Defendants' actions" (ECF 66 at 44), which the Court presumes to request vacatur of the September 21, 2015 ROD.  Order at 48.  But vacatur of the ROD would not achieve Plaintiffs' goal of halting or reducing agency actions related to oil and gas and coal development in the Miles City and Buffalo planning areas during remand, nor is it warranted under these circumstances.

The Court's Order recognizes two difficulties with vacating the ROD.  *First,* the ROD addresses eight RMPs spanning millions of federally-managed acres; yet, Plaintiffs challenged only the Miles City and Buffalo RMPs.  Order at 48-49. Thus, vacating the ROD would be overly broad and have unintended, disruptive consequences.  *Second*, the Court's Order recognizes that "a decision to set aside the Buffalo RMP and the Miles City RMP would cause BLM's management plan to revert to the 1985 Buffalo RMP and the 1996 Miles City RMP."  *Id.* at 49. Under the prior RMPs, the lands at issue in this appeal are open to mineral leasing with *fewer* conservation measures (*see* ECF 79 at 8) and, therefore, reversion to the old plans during remand would be contrary to Plaintiffs' litigation goals.  Because of these particular administrative realities, vacatur of the ROD, in total or as it relates specifically to the Miles City and Buffalo planning areas, is inappropriate.

Further, while vacatur is one potential remedy for a violation under the APA and NEPA, vacatur is by no means required. *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012); *Beverly Hills Unified Sch. Dist. v. Fed. Transit Admin.*, 2016 WL 4445770, at *12 (C.D. Cal. Aug. 12, 2016) (argument that vacatur is the "presumptive remedy" has been "debunked" by the Ninth Circuit). Instead, the Court may fashion an appropriate remedy based upon principles of equity. *Idaho Farm Bureau Fed'n v. Babbitt,* 58 F.3d 1392, 1405-06 (9th Cir. 1995) ("when equity demands, the [agency action] can be left in place while the agency follows the necessary procedures"); *Pit River Tribe v. U.S. Forest Serv.,* 615 F.3d 1069, 1080-81 (9th Cir. 2010) ("Our courts have long held that relief for a NEPA violation is subject to equity principles.").

In determining whether vacatur is warranted, courts in the Ninth Circuit must balance the seriousness of the agency's errors with "the disruptive consequences of an interim change that may itself be changed." *Cal. Cmtys. Against Toxics*, 688 F.3d at 992 (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993) (internal quotation marks omitted)); *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015). Because the disruptive consequences of vacatur far outweigh the seriousness of BLM's NEPA error, vacatur is not appropriate here.

**A.    The Errors the Court Identified Are Not So Serious as to Warrant Vacatur.**

The Court's Order found that BLM's NEPA analysis was deficient for three narrow reasons, all pertaining to BLM's analysis of downstream combustion of coal, oil, and gas. Order at 46-48. The Court found that BLM erred by (1) carrying forward earlier coal screening determinations that failed to consider climate change (*but see* n.2, *supra*), (2) inadequately considering the environmental consequences of downstream combustion, and (3) failing to justify use of global warming potential factors based on a 100-year time horizon rather than the 20-year time horizon of the RMPs. *Id.* However, these combustion-related impacts and measurement tools were but a small component of BLM's robust analysis of myriad environmental impacts. These narrow flaws identified by the Court do not warrant vacatur of the ROD or RMPs.

Indeed, in the face of similar NEPA challenges, the Tenth Circuit has recently declined to vacate coal leases upon finding that BLM's NEPA analysis of downstream related impacts was deficient. *WildEarth Guardians v. BLM*, 870 F.3d 1222, 1240 (10th Cir. 2017). The Tenth Circuit found that because the challenged impacts were "fairly narrow," the district court could fashion a narrower remedy than vacatur. *Id.* On remand, the Wyoming District Court agreed, remanding the FEIS and ROD to BLM for further NEPA analysis without

14

vacating the leases. *WildEarth Guardians v. BLM*, No. 2:13-CV-00042-ABJ, ECF 132 at 3-4 (D. Wyo. Nov. 27, 2017).

Similarly, the elements of the FEISs and RMPs the Court found deficient in the instant case were but small pieces of a much larger resource management blueprint—the vast majority of which was not before the Court. The RMPs set forth goals, objectives, and management decisions covering a wide range of categories, including biological resources, water resources, heritage and visual resources, fire management, recreation, and socioeconomic resources. ECF 80 at 4-5, 20. Mineral development was but one of many anticipated resource uses covered by the FEISs and plans. *Id.* And of the six claims Plaintiffs brought challenging BLM's analysis of environmental impacts from mineral resource development, Plaintiffs prevailed on only three, one of which may be subject to a motion for reconsideration. Given the narrow scope of Plaintiffs' challenge and the identified NEPA deficiencies, a narrower remedy is sufficient.

In addition, vacatur is not warranted where there is "at least a serious possibility" that BLM could "substantiate its decision on remand." *Pollinator Stewardship Council*, 806 F.3d at 532 (quoting *Allied-Signal*, 988 F.2d at 151). Here, the Court did not find that the "substantive choices which were made by the [BLM] . . . were so wrong that they could not properly make the same determination upon remand." *Beverly Hills*, 2016 WL 4445770, at *12.

15

Therefore, like in *Beverly Hills* and *Pollinator Stewardship*, vacatur is not warranted because on remand it is likely that BLM will "be able to offer better reasoning" to support its decision to approve the RMPs. *Id.*; *Pollinator Stewardship Council*, 806 F.3d at 532.

In sum, the nature of the NEPA errors this Court identified do not support vacatur.

### B.      The Disruptive Consequences of Vacatur Are Significant, Rendering Vacatur Unwise.

Plaintiffs do not dispute that the 2015 Miles City and Buffalo RMPs were necessary for BLM to address conditions that have changed in the planning areas since the prior plans were adopted, particularly the conservation of the Greater-Sage Grouse. *See* Order at 3. The challenged RMPs provide more conservation measures than the prior RMPs, and provide updated guidance for BLM to manage public lands for the benefit of the American public.

When evaluating the disruptive consequences that may result from vacatur, the Court should consider not only the consequences to BLM's management of millions of acres of public lands and those affected by the RMPs (including members of the public), but also whether Plaintiffs have shown they would suffer any disruptive consequences absent vacatur. *Beverly Hills*, 2016 WL 4445770, at *12.

Here, vacatur of the ROD or the RMPs, in whole or in part, while BLM reconsiders the three narrow issues related to downstream combustion on remand, would be unnecessarily disruptive to BLM's implementation of a significant number of pending actions involving the broad-range of resources covered by the RMPs and the public's interest in proper management of public lands.  In addition, any vacatur of the RMPs that would also enjoin future BLM actions regarding mineral development pending remand would be improper (for the reasons discussed above), and unnecessary in light of the Court's Order directing BLM to "comply with the rulings in this Order at the lease-level and permit-level for any pending or future coal, oil, or gas developments."  Order at 50-51.

Moreover, Plaintiffs have not grappled with the consequences of their request for partial vacatur of the ROD and/or RMPs, which would result in some Frankenstein-like RMPs created from a partial vacatur of the 2015 RMPs and re-implementation of the previously applicable RMPs.  The creation of any temporary, *ad hoc* RMPs would exceed the Court's authority, spawn unproductive litigation, and create chaos for BLM's planning personnel and the regulated public.

Finally, Plaintiffs cannot show that they would be harmed if vacatur is not ordered during remand.  The particular harms they allege in this case – climate change and other combustion related impacts – would not be affected in any measurable sense during the estimated one-year period within which BLM has

17

committed to complete the supplemental NEPA analysis.  This is because (1) coal, oil, and gas from existing federal and non-federal leases will continue to be developed in the planning areas and combusted across the country, and (2) vacatur of the RMPs would reinstate the prior RMPs, under which mineral leasing and development in the challenged planning areas would still be authorized.  Accordingly, vacatur is not warranted.  *Id.*; *Cal. Cmtys. Against Toxics*, 688 F.3d at 994.

## CONCLUSION

Defendant-Intervenors respectfully request that the Court remand the FEISs to BLM for further NEPA analysis consistent with the Court's Order and deny Plaintiffs' request for vacatur and injunctive relief.  Defendant-Intervenors reserve the right to request additional briefing on remedy should Plaintiffs submit new facts or legal argument not already addressed here.

Respectfully submitted this 25th day of May, 2018.

/s/ *Andrew C. Emrich*
Andrew C. Emrich (*Pro Hac Vice*)
HOLLAND & HART LLP
6380 South Fiddlers Green Circle, Suite 500
Greenwood Village, CO 80111

/s/ *William W. Mercer*
William W. Mercer
HOLLAND & HART LLP
P.O. Box 639
Billings, MT 59103-0639

*Attorneys for Defendant-Intervenor*
*Cloud Peak Energy Inc.*

*/s/ W. Anderson Forsythe*
W. ANDERSON FORSYTHE
BRANDON J.T. HOSKINS
27 North 27th Street, Suite 1900
P.O. Box 2559
Billings, Montana 59103-2559

/s/ *Kirsten L. Nathanson*
Kirsten L. Nathanson (*Pro Hac Vice*)
Elizabeth B. Dawson
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004

*Attorneys for Defendant-Intervenors*
*Peabody Caballo Mining, LLC,*
*and BTU Western Resources, Inc.*
*/s/ David C. Dalthorp*
David C. Dalthorp
Jackson, Murdo & Grant, P.C.
203 North Ewing Street
Helena, MT 59601

/s/ *Erik E. Petersen*
Senior Assistant Attorney General
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, WY 82002

*Attorneys for Defendant-Intervenor*
*State of Wyoming*

## CERTIFICATE OF COMPLIANCE

The undersigned, Andrew C. Emrich, certifies that this Brief complies with the requirements of Rule 1.5 and the Court's Order dated March 26, 2018 (ECF No. 111).  The lines in this document are double spaced, except for footnotes and quoted and indented material, and the document is proportionately spaced with Times New Roman Font typeface consisting of fourteen characters per inch.  The total word count is 4,477 words, including the caption, certificates of service and compliance.  The undersigned relies on the word count of the word processing system used to prepare this document.

*/s/ Andrew C. Emrich*
Andrew C. Emrich
*Attorney for Defendant-Intervenor*
*Cloud Peak Energy Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2018, I electronically filed the foregoing

document, Defendant-Intervenors' Joint Remedy Brief, with the clerk of the court

for the United States District Court for the District of Montana using the CM/ECF

system.

*/s/ Andrew C. Emrich*
Andrew C. Emrich
*Attorney for Defendant-Intervenor*
*Cloud Peak Energy Inc.*

10938312_8